A07A0907, A07A0908. DAVIS v. WALKER et al.; and vice versa.
(655 SE2d 634)

BERNES, Judge.

In this action for breach of fiduciary duty, the beneficiaries of the Glennys Marr Davis Revocable Trust filed suit against the trustee, Lee Edward Davis, and sought the removal of Davis as trustee, the return of certain funds to the Trust, and attorney fees. Following a bench trial, the trial court granted the beneficiaries' request for Davis's removal as trustee, finding that Davis had breached his fiduciary duty by violating his duty to provide an annual accounting to the beneficiaries, by committing waste, and by creating a conflict of interest between himself and the beneficiaries. The trial court further ruled that the funds from the joint account did not have to be

---

returned because they were solely vested in Davis and were not Trust property. Attorney fees were not awarded to either party.

These cross-appeals followed. In Case No. A07A0907, Davis appeals the trial court's finding that he breached his fiduciary duty by committing waste and creating a conflict of interest.[1] In Case No. A07A0908, the beneficiaries appeal the trial court's ruling that the funds from the joint account were not Trust property and its denial of their request for attorney fees. For the reasons set forth below, we affirm in both cases.

*Case No. A07A0907*

1. Davis challenges the trial court's decision removing him as trustee based upon its finding that he breached his fiduciary duty by committing waste and by creating a conflict of interest. We discern no error.

On appeal from a bench trial, the evidence must be construed to uphold the judgment, and if there is any evidence to support the judgment, it must be affirmed. See *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 136 (1) (327 SE2d 192) (1985). "A trustee may be removed . . . [u]pon application to the superior court by any interested person showing good cause." OCGA § 53-12-176 (a) (2). "In determining whether to remove a trustee, the primary consideration is whether the trustee's continuance in that position would be detrimental to the proper administration and best interests of the trust." (Citation omitted.) *Ivey v. Ivey*, 266 Ga. 143, 145 (4) (465 SE2d 434) (1996). We will not reverse a trial court's order regarding removal of a trustee unless the evidence establishes an abuse of discretion. Id.

Construed in accordance with these standards, the trial evidence shows that on February 5, 1991, Glennys Marr Davis ("the donor") executed her Last Will and Testament and created the Glennys Marr Davis Revocable Trust for Management and Disability Purposes. Lee Edward Davis, the donor's son, was designated as the executor of the will and trustee of the Trust.

The donor died on July 15, 1994. In accordance with the terms of the will, the donor's personal property was distributed equally among the beneficiaries and the residual property poured over into the

---

[1] Davis does not challenge the trial court's ruling that he breached his fiduciary duty by failing to provide an annual accounting to the beneficiaries. He contends, however, that this failure was not sufficient in itself to authorize his removal as trustee. But, the trial court's ruling was based upon the combined breaches of fiduciary duty. As discussed in this decision, we conclude that the trial court was authorized to remove Davis as trustee based on its finding that Davis breached his fiduciary duty by failing to exercise reasonable care in the management of the Trust.

Trust. After the will was probated, Davis was discharged as the executor, and he began to administer the Trust on behalf of the beneficiaries. The Trust assets were comprised of the donor's former three-bedroom wood frame residence and approximately 15.25 acres of land. The Trust listed the donor's three children, including Davis, as the income beneficiaries, with a remainder interest in the donor's grandchildren.

The record reflects that over the 11 years Davis served as trustee, the Trust lacked sufficient income to pay the property taxes, insurance, and utilities. The Trust agreement gave Davis the power to sell or lease Trust assets to generate income for the Trust, but Davis chose not to sell or lease any part of the property in order to pay the expenses incurred by the Trust. Instead, Davis made personal loans to the Trust to pay the expenses. Davis also made personal loans to the Trust to pay for alleged repairs and improvements to the residence in the approximate amount of $57,000. Davis's personal loans to the Trust were to be repaid with interest accruing at the applicable federal rate.

The beneficiaries complained that Davis was not providing them an accounting of the Trust assets, liabilities, and management decisions. As a result, the beneficiaries filed the instant lawsuit seeking an accounting and requesting that Davis be compelled to provide them with quarterly statements. Although Davis claimed to have made oral reports to the income beneficiaries in 1994 and 1995, he admitted that he did not provide reports in subsequent years until after the lawsuit was filed. Upon receiving a report after the filing of the lawsuit, the beneficiaries amended their complaint to allege that Davis was mismanaging the Trust assets by incurring needless expenses for repairs to the property, while at the same time failing to lease the property or otherwise generate any income to offset the expenses. At that time, they sought to have Davis removed as trustee.

In light of the facts set forth above, the trial court concluded that Davis had breached his fiduciary duties, in relevant part, by committing waste of the Trust assets and by creating a conflict of interest. Based upon these conclusions, the trial court removed Davis as trustee. We find no error in the trial court's factual findings and affirm the judgment, albeit using different terminology than that of waste or conflict of interest. See *Ashburn Health Care Center v. Poole,* 286 Ga. App. 24, 27 (648 SE2d 430) (2007) ("we will affirm a judgment that is right for any reason").

> A breach of trust is a violation by the trustee of any duty which as trustee he owes to the beneficiary. One manner in which the trustee may breach the trust is the failure to exercise the degree of care and skill as a person of ordinary

prudence would exercise in administering the trust. A trustee is under a duty not merely to exercise care but he must also exercise a reasonable degree of skill. The standard is an external standard, that of the reasonably prudent man.

(Citations and punctuation omitted.) *C & S Nat. Bank*, 254 Ga. at 134 (1). See also *Namik v. Wachovia Bank of Ga.*, 279 Ga. 250, 252 (2) (612 SE2d 270) (2005); IIA Scott on Trusts § 174 (4th ed. 2001).

Bearing this standard in mind, we conclude that there was evidence from which the trial court could conclude that Davis failed to exercise reasonable care in the management of the Trust assets. As previously noted, Davis made personal loans to the Trust to pay for alleged repairs and improvements to the residence in the approximate amount of $57,000. It is true that there is no general prohibition against a trustee making loans to the trust for repairs or improvements. See IIA Scott on Trusts § 170.20. Nevertheless, in incurring debt on behalf of the trust to make repairs and improvements to trust property, a trustee is held to the standard of a reasonably prudent person. See id. at § 188.2.

Here, the evidence supported a finding that Davis breached the standard of care by allowing Trust debt to continue to increase, while at the same time failing to lease the property or otherwise generate any income to offset the various mounting debts that were being incurred. The Trust lacked the funds to pay ordinary expenses, including property taxes, insurance premiums, and utilities, and the debt encumbering the Trust was increasing as a result of the loans bearing interest that Davis made to the Trust. Despite this increasing debt load, and even though the Trust agreement specifically authorized Davis to sell or lease Trust property to generate income for the Trust, Davis made no effort to rent out the residence located on the Trust property or take any other steps to generate income. The general rule is that a trustee has the duty to lease trust property, or otherwise take reasonable steps to generate income for the trust, if doing so is necessary to preserve the trust assets, pay necessary expenses, or support the dependent beneficiaries. See *Hutcheson v. Hodnett*, 115 Ga. 990, 995 (42 SE 422) (1902); III Scott on Trusts § 189. Davis failed to comply with this duty.

While Davis presented some evidence that the residence was not suitable to rent, it was contradicted by other evidence in the record. Specifically, there was trial evidence showing that at some point in the eleven-year period in which he served as trustee, Davis purported to rent the residence to a tenant for $500 per month for four months, although he never actually collected any rent from the tenant. Davis further admitted that he himself had lived at the residence for short periods of time, indicating that the residence was habitable. As the

trier of fact, it was for the trial court, not this Court, to resolve any conflicts in the evidence presented at the bench trial. See *Bowen Builders Group v. Reed*, 252 Ga. App. 54, 56 (555 SE2d 745) (2001). Accordingly, the trial court was authorized to find that Davis breached his fiduciary duty by failing to lease the property or make it productive in the face of rising indebtedness.

For these reasons, the trial court did not abuse its discretion in removing Davis as trustee. Davis has failed to articulate any basis for reversing the trial court's judgment.

### Case No. A07A0908

2. In this cross-appeal, the beneficiaries contend that the trial court erred in finding that funds from a joint account previously maintained in the names of the donor, beneficiary Patricia Walker, and Davis did not become Trust property following the donor's death.

The evidence establishes that during the donor's lifetime, she maintained a joint bank account with her children, Walker and Davis, in the amount of approximately $40,000. All of the funds in the account were deposited by the donor.[2] In April 1994, prior to the donor's death, the funds from the joint account were transferred and used to purchase securities in the name of the donor and Davis as joint tenants with the right of survivorship. Walker acknowledged that she was not named as a joint tenant on the securities account.

The donor's will further specifically provided that

All stocks, bonds, savings accounts, checking accounts, certificates of deposit, money market funds and other similar property [the donor] may own at the time of [the donor's] death in the name of [the donor] and any other person which are in terms payable on or after [the donor's death] to such person shall be the sole property of such person, and [the] Executor shall make no claim against such person on account thereof.

Based upon this provision and statutory law governing ownership of a joint account following the death of a joint tenant, Davis was determined to be the sole owner of the account assets. We agree.

---

[2] "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." OCGA § 7-1-812 (a). Here, the evidence reflects that all the sums in the account were deposited by the donor; therefore, all the funds in the joint account belonged solely to the donor during her lifetime. The donor's withdrawal or transfer of funds from the account did not require Walker's consent.

OCGA § 7-1-813 (a) provides that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party . . . as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." Likewise, under OCGA § 14-5-8, shares or securities owned by persons as joint tenants with a right of survivorship will be transferred to the surviving joint tenant following the death of either tenant. See *Glisson v. Freeman*, 243 Ga. App. 92, 100 (1), n. 13 (532 SE2d 442) (2000); *Willig v. Shelnutt*, 224 Ga. App. 530, 532 (1) (480 SE2d 924) (1997). Here, the evidence establishes that during the donor's lifetime, the funds from the joint account were used to purchase the securities owned solely by the donor and Davis as joint tenants with right of survivorship. In addition to the statutory presumption that ownership of this property became vested in Davis as the surviving joint tenant after the donor's death, the donor's will reflected her intent that Davis would have sole ownership of these assets to the exclusion of the estate. As such, the trial court was correct in its ruling that the account assets belonged to Davis and not to the Trust.

3. The beneficiaries further contend that the trial court erred in denying their request for attorney fees as the prevailing party in the action to remove Davis as the trustee. They contend that Davis acted in bad faith to the detriment of the Trust and caused unnecessary trouble and expense by refusing to comply with his fiduciary duties, leading to the initiation of this lawsuit.

"The issue of whether attorney fees should be awarded based upon the other party's bad faith is a question for the factfinder to be determined from consideration of the facts and circumstances in the case. We review the trial court's denial of attorney fees under an abuse of discretion standard." (Footnotes omitted.) *Wachovia Bank of Ga. v. Namik*, 275 Ga. App. 229, 234 (3) (b) (620 SE2d 470) (2005).

OCGA § 53-12-193 (a) (4) permits the trial court to exercise its discretion in awarding expenses of litigation, including reasonable attorney fees, incurred by beneficiaries in bringing an action against a trustee for breach of fiduciary duty. Yet, "that Code section does not require a court to award — or even consider awarding — attorney fees upon a finding of breach of fiduciary duty. It merely allows such an award." *Namik*, 275 Ga. App. at 235 (3) (b). OCGA § 13-6-11 also permits a plaintiff to recover attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." But, in the event of a bona fide controversy, recovery of attorney fees under OCGA § 13-6-11 is not authorized, absent a finding of bad faith. *Nextel South Corp. v. R. A. Clark Consulting*, 266 Ga. App. 85, 88 (4) (596 SE2d 416) (2004). "Bad faith is not simply bad judgment or negligence, but it

imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." (Punctuation and footnote omitted.) *Namik*, 275 Ga. App. at 234 (3) (b).

Notwithstanding the beneficiaries' contentions, the trial court did not abuse its discretion in refusing to award attorney fees in this case. Although the beneficiaries ultimately prevailed in their action to have Davis removed as trustee based upon a breach of fiduciary duty, a bona fide controversy existed and the evidence did not require a finding that Davis acted in bad faith in his decisions.

While the trial court concluded that Davis had not complied with his duty to provide reports to the beneficiaries, Davis presented a plausible defense that the trust agreement did not unambiguously impose a duty to make quarterly reports to the beneficiaries as they requested and that he thought his duty had been satisfied by providing oral reports during the years of 1994 and 1995. Davis also testified that he made documents available for the beneficiaries' review in response to discovery requests during the course of the litigation, but no one appeared to review the documents.

The evidence also supported a finding that Davis had not acted in bad faith by spending $57,000 on alleged repairs and improvements to the Trust residence, by making personal loans bearing interest to the Trust, or by failing to lease the residence or take other steps to generate income. Although it ultimately was determined that Davis's actions were unreasonable under the circumstances here, the evidence did not conclusively establish that Davis acted in bad faith.

Finally, we find no merit in the beneficiaries' argument that the trial court erroneously failed to make factual findings in its denial of their claim for attorney fees. "[C]ontrary to [the beneficiaries'] contention, findings of fact are required only when a trial court grants an award of attorney fees." (Footnote omitted.) *Namik*, 275 Ga. App. at 235 (3) (b). We therefore find no error.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 21, 2007 —
RECONSIDERATION DENIED DECEMBER 11, 2007.

*Banks & Stubbs, Robert S. Stubbs III, Powell Goldstein, Jennifer D. Odom, Luke A. Lantta, Ashley M. Palmer*, for appellant.

*David L. Cannon, Jr., Thompson & Cline, Patricia A. King, John A. Meier II*, for appellees.